IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CITIZENS IN CHARGE, MIKE GROENE, and DONALD SLUTI, | ) ) ) | 4:09CV3255 |
| Plaintiffs, | ) ) | |
| LIBERTARIAN PARTY OF NEBRASKA and LIBERTARIAN NATIONAL COMMITTEE, | ) ) ) ) | MEMORANDUM AND ORDER |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) | |
| JOHN A. GALE, in his official capacity as Secretary of State of the State of Nebraska, | ) ) ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on the motion for a temporary injunction, Filing No. 26, of plaintiff-intervenors Libertarian Party of Nebraska and Libertarian National Committee, Inc. ("Libertarian Party'"). On June 29, 2010, the court conducted a hearing, entertained argument, and received evidence. At that time the court granted the Libertarian Party's motion to intervene. Filing No. 24. After carefully reviewing the evidence and the relevant law, the court will deny the motion for preliminary injunction.

**BACKGROUND**

Plaintiffs brought this action to enforce their First Amendment rights of political free speech. Plaintiff Citizens in Charge is an educational not-for-profit that is dedicated to protecting and expanding ballot initiative and referendums in Nebraska and other states. The members include citizens in both Nebraska and other states. Plaintiffs Donald Sluti ("Sluti") and Mike Groene ("Groene") are Nebraska residents and registered voters.

Groene assists with securing petitions and Sluti is an independent who wants to run for office.  Secretary of State John Gale is the defendant.  The intervenors are the Libertarian Party of Nebraska and Libertarian National Committee, Inc.  Plaintiffs believe the Nebraska statutes cited below make it impossible to gather signatures. Plaintiffs state:

> At issue are three provisions of Nebraska law: Neb. Rev. Stat. § 32-618(2)(a), Neb. Rev. Stat. § 32-629(2), and Neb. Rev. Stat. § 32-628(4). The first sets out a signature-distribution requirement for would-be independent candidates, requiring them to obtain at least 50 signatures from at least one-third of Nebraska's counties on a candidacy petition before they may appear on the ballot. The second requires petition circulators to be "electors" of the State of Nebraska.  The third requires all petitions to contain certain language in large, red type.  The plaintiffs claim that these provisions violate various rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983, and they ask this Court for declaratory and injunctive relief prohibiting state officials from enforcing the unconstitutional statutes now and in the future.

Filing No. 1, Complaint, page 1.  Plaintiffs seek to enjoin enforcement of Neb. Rev. Stat. § 32-629(2).[1]  Plaintiffs argue that they want to field Libertarian Party candidates for the November 2010 election, and they want to hire a petition-gathering firm to collect signatures.  It appears that at least some of these circulators will be paid and will be nonresidents.

The law requires that only electors of the State of Nebraska may circulate petitions under the Election Act.  Plaintiffs and the Libertarian Party argue this imposes residency requirements on petition circulators.  Petitions circulated by nonresidents will be declared invalid.  The Libertarian Party  argues that circulation of petitions is core political speech. The Libertarian Party requests that this court enter a declaratory judgment finding the residency requirement violates the First Amendment.

---

[1] The only issue before the court relating to the preliminary injunction regards the residency requirement.  No other issues are currently before the court.

**ANALYSIS**

When analyzing a motion for a preliminary injunction, the court must review the *Dataphase* factors to determine if relief is appropriate. The extraordinary remedy of a preliminary injunction should not be granted unless the movant has demonstrated: (1) the threat of irreparable harm to it; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that it will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113-14 (8th Cir.1981) (en banc)*. No single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, generally by itself, a sufficient ground upon which to deny a preliminary injunction. *See Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297, 299 (8th Cir.1996)*; *see also Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc)*. The burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits. *Calvin Klein Cosmetics Corp. v. Lenox Lab., 815 F.2d 500, 503 (8th Cir.1987)*. Further, when a party is seeking to enjoin enforcement of a statute, the standard for granting an injunction is more rigorous, and the court must find plaintiffs likely to win on the merits before proceeding to the other factors. *Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008)*.

*A. Likelihood of Success on the Merits*

The Libertarian Party argues that petition circulation is core political speech which should receive heightened First Amendment protection. *Buckley v. Am. Constitutional Law Found., Inc., 525 U.S. 182, 186 (1999)*. Several courts have struck down state laws that

imposed residency requirements on petition circulators.   *See Nader v. Blackwell,* 545 F.3d 459 (6th Cir. 2008); *Nader v. Brewer,* 531 F.3d 1028 (9th Cir. 2008); *Yes On Term Limits v. Savage,* 550 F.3d 1023 (10th Cir. 2008).  However, the Eighth Circuit has upheld a residency restriction on petition circulators.  *Initiative & Referendum Inst. v. Jaeger,* 241 F.3d 614 (8th Cir. 2001) (residency restriction narrowly tailored to protecting initiative process from abuse and fraud, since residents are subject to subpoena power regarding fraud and abuse); *see also Doe v. Reed,*     S. Ct.    , 2010 WL 2518466 (June 24, 2010) (request for injunction to declare that State of Washington could not disclose the names of those who signed a referendum petition; Supreme Court found this disclosure constitutional under the strict scrutiny test on its face, as it supported state's interest in upholding the integrity of the electoral process).  The plaintiffs want this court to distinguish *Jaeger* and find the Eighth Circuit unpersuasive, on the basis that there is no specific fraud alleged in this case.  The defendant argues that *Jaeger* is controlling and dispositive of this case.

The court agrees that  *Jaeger* is controlling in this case.  It does not matter that other circuits have disagreed with this analysis and found contrary to the Eighth Circuit holding.  This court is bound by the Eighth Circuit law.  The issues and facts in this case are very similar to those in *Jaeger*.  *Jaeger* involved a North Dakota constitutional provision that only qualified electors (18 years of age and a resident) could circulate initiative petitions.  The Eighth Circuit specifically found that residency requirements for those gathering petition signatures are not unconstitutional under *Jaeger*.  It is not for this court to determine if *Jaeger* is correctly decided.  That decision is left to the Eighth Circuit.  Since the *Jaeger* case dictates the result in this case, the court finds that the defendants are likely to win on the merits.

### B. *Irreparable Harm / Balance of Harm /Public Interest*

The Libertarian Party agues that absent an injunction the plaintiffs will suffer a deprivation of their constitutional rights under the First Amendment. The Libertarian Party also argues it would go bankrupt if forced to use in-state circulators. Defendant argues there is harm to the public because of potential and real fraud and misrepresentations. Because these circulators are not residents, argues defendant, they cannot be easily subpoenaed into court. The defendant quotes legislative testimony to show that it offered evidence to the Unicameral of past fraud in the signature-collection process.

The Libertarian Party relied on the affidavit testimony of Paul Jacob, Filing No. 35-1, and Gene Siadek, Filing No. 40. Mr. Jacob is the President of Citizens in Charge. He states that the cost is increased if one has to use in-state circulators. He indicated the cost would be five to ten times the cost of an outside circulator. The court finds his testimony less than credible. It is not supported by any objective evidence and is without sufficient foundation. In substance, it states a conclusion and is self-serving.

Mr. Siadek is the Chair of the Libertarian Party. Mr. Siadek indicated that hiring and training of local Nebraskans could cost fifty percent more than bringing in trained circulators. Mr. Siadek mentions nothing about the transportation costs for paid circulators from out of state, or other expenses such as housing, gas and subsistence. There is no actual comparison of in-state versus out-of-state costs. The plaintiffs have not established a significant factual difference between the so-called hardships identified in *Jaeger* and the instant matter. The interest of the public to have recourse if fraud occurs in the petition process is a strong factor in favor of the defendant. Accordingly, the court finds these factors would likewise weigh in favor of the defendant.

5

**CONCLUSION**

The court finds *Jaeger* is dispositive in this case and accordingly will deny the motion

for a preliminary injunction.

THEREFORE, IT IS ORDERED that the Libertarian Party's motion for a preliminary

injunction, Filing No. 27, is denied.

DATED this 1st day of July, 2010.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.